UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| DIVERSICARE | ) | |
| OF NICHOLASVILLE, LLC, | ) | |
| *Et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Action No. 5:16-cv-53-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MARSHA LOWRY, | ) | **MEMORANDUM OPINION AND ORDER** |
| as Administratrix of Estate | ) | |
| of Ruth Harvey, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

** ** ** ** **

This matter is before the Court on Defendant Lowry's Amended Motion to Dismiss [DE 6] pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party under Rule 19.[1]  In her Response, Defendant asks this Court to determine that it lacks jurisdiction in this matter or, in the alternative, abstain from exercising jurisdiction and to dismiss the Plaintiffs' Complaint under the Colorado River abstention doctrine in favor of the parallel state court action pending in the Jessamine Circuit Court.  She further asserts that, in any event, that any injunctive relief would be inappropriate under the Anti-Injunction Act.  As explained below, the Court disagrees.  Rather, Plaintiffs' Motion for Expedited

---

[1] Defendant's earlier filed Motion to Dismiss [DE 5] will be denied as moot.

Consideration of Complaint to Compel Arbitration and to Enjoin Defendant [DE 3] is well-received, at least in part. For the reasons which follow, relief will be afforded both parties, but Defendant will be enjoined from pursuing a subset of her claims before the Jessamine Circuit Court.

**I.**

On December 28, 2015, Defendant in this action filed a Complaint in the Jessamine Circuit Court alleging negligence in the care and treatment provided to Ruth Harvey during her stay at Diversicare of Nicholasville, a skilled nursing facility located in Nicholasville, Kentucky, which resulted in Harvey's injury and premature demise. Lowry, who is a citizen of Kentucky as is Harvey's estate, seeks relief against Diversicare of Nicholasville, LLC, Diversicare Healthcare Services, Inc., Diversicare Management Services Co., Diversicare Leasing Corp., Diversicare Leasing Company II, LLC, Omega Healthcare Investors, Inc., and Royal Manor, Inc., as well as against certain administrators of Royal Manor n/k/a Diversicare of Nicholasville: Benjamin Sparks, Terry W. Willis, and Sam Frazier.

Diversicare of Nicholasville, LLC, Diversicare Healthcare Services, Inc., Diversicare Management Services Co., Diversicare Leasing Corp., and Diversicare Leasing Company II, LLC, are citizens of other jurisdictions for the purposes of the action before this Court and are named as Plaintiffs in this action.

Neither Sparks, Willis, or Sam Frazier, all of whom are citizens of Kentucky, are named as plaintiffs in the matter pending before this Court.

By virtue of their Complaint in this action, Plaintiffs ask this Court to enforce an arbitration agreement entered into on behalf of Ruth Harvey by Marcia Lowry, then serving as Harvey's attorney-in-fact, and Diversicare of Nicholasville, LLC, and to stay the pursuit of the action in Jessamine Circuit Court in order that any arbitration ordered may proceed.

## II.

As an initial matter and in the face of Defendant's Motion to Dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and (7), the Court concludes that it has jurisdiction to consider this matter. Defendant argues that there is no jurisdiction because Plaintiffs have failed to join a necessary party under Rule 19 and, once the citizenship of that necessary party is taken into account, there is a lack of subject-matter jurisdiction under 28 U.S.C. § 1332 because (1) the parties will not be of diverse citizenship and (2) the Federal Arbitration Act will not, alone, create a federal question which would confer jurisdiction under 28 U.S.C. § 1331 in this matter upon this Court.[2] For the same reasons

---

[2] Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4. That is, the FAA "'bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis' [for access to a federal forum]

announced in *Preferred Care, Inc. v. Belcher*, No. 14-CV-107-JMH, 2015 WL 1481537, at *1-3 (E.D. Ky. Mar. 31, 2015), the Court disagrees.

A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists. *See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1133–35 (6th Cir.1996); *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994); *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990).

28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States," and Plaintiffs contend that this Court has jurisdiction based on the diversity of the parties. In the instant action, there is no dispute that the amount in controversy exceeds the sum or

---

over the parties' dispute." *Vaden v. Discover Bank,* 556 U.S. 49, 59, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) (quoting *Hall Street Assoc., LLC v. Mattel, Inc.,* 552 U.S. 576, 581–82, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (internal quotation marks omitted)); *see also Moses. H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 4 of the FAA "neither expand[s] nor contract[s] federal subject matter jurisdiction." *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 747 n .7 (8th Cir.1986). Thus, a petitioner proceeding under § 4 must assert an independent source of subject matter jurisdiction. Here, the plaintiffs assert only that the Court has diversity jurisdiction pursuant to 18 U.S.C. § 1332.

value of $75,000, exclusive of interest and costs. Further, there is no dispute that Defendant is a resident of Kentucky and that each of the named Plaintiffs in this action is a citizen of another state. However, Sparks, Willis, and Frazier, nursing home administrators named as defendants in the state complaint but not as a party in the present matter, are citizens of Kentucky. Defendant claims that complete diversity of citizenship among the parties in this case cannot be maintained because, while Sparks, Willis, and Frazier are not named as plaintiffs in this action, they are indispensable parties under Fed. R. Civ. P. 19 and their joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1).

If lack of subject-matter jurisdiction is raised in a motion to dismiss, the plaintiff "bears the burden of proving jurisdiction ... to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir .2002). However, the plaintiff will "survive [a] motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1248 (6th Cir.1996)). The existence of a non-diverse party in the related state court action does not, on its own, destroy diversity:

> Rule 19 deals with what were historically
> known as "necessary" and "indispensable"
> parties. The terms "necessary" and

5

> "indispensable" are terms of art in
> jurisprudence concerning Rule 19, and
> "necessary" refers to a party who should be
> joined if feasible, while "indispensable"
> refers to a party whose participation is so
> important to the resolution of the case that,
> if the joinder of the party is not feasible,
> the suit must be dismissed. If a necessary
> party cannot be joined without divesting the
> court of subject-matter jurisdiction, the Rule
> provides additional criteria for determining
> whether that party is indispensable, but if
> the court finds that the party is anything
> less than indispensable, the case proceeds
> without that party, and if, on the other hand,
> the court finds that the litigation cannot
> proceed in the party's absence, the court must
> dismiss the case.

*GGNSC Vanceburg, LLC, v. Hanley,* Civil Action No. 13-106-HRW, 2014 WL 1333204, *3 (E.D.Ky. Mar.28, 2014).

Accordingly, the Court first considers whether Sparks, Willis, and Frazier are even necessary parties, which they are if, "in [their] absence, complete relief cannot be accorded among those already parties" or "[their] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [their] absence may ..., as a practical matter, impair or impede [their] ability to protect the interest" or their absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

The claims against the defendants in the state court action, which group of defendants includes the various Plaintiffs to this

action and Sparks, Willis, and Frazier, are based on the same occurrence—the alleged negligence at the nursing home that resulted in injury to Harvey. The arbitration agreement, by its terms, governs claims against the corporate parties as well as the administrators and its enforceability with respect to all parties, including Sparks, Willis, and Frazier, is a matter pending before the state court. If this Court and the state court were to reach different conclusions concerning the enforceability of the arbitration agreement, Lowry could be placed in a position where she was obliged to arbitrate the claims with some of the parties covered by the agreement and to proceed in litigation before the state court with respect to other parties, Sparks, Willis, and Frazier, who are arguably covered by the agreement. Thus, Lowry is subject to a substantial risk of incurring inconsistent obligations because of Sparks, Willis, and Frazier's interests in this matter. Accordingly, the Court concludes that Sparks, Willis, and Frazier are necessary parties to the action.

As the joinder of Sparks, Willis, and Frazier, citizens of Kentucky, would destroy diversity jurisdiction, the Court must determine whether they are "indispensable." Thus, the Court must balance the following factors: (1) the extent to which a judgment rendered in their absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the

relief, or other measures; (3) whether a judgment rendered in his absence would be adequate; and (4) whether Plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. P. 19(b).

Lowry argues that she will not be afforded complete relief in the absence of Sparks, Willis, and Frazier as plaintiffs to this action. She asserts that there could then be a duplication of proceedings and that she will be unduly and unnecessarily prejudiced if she is subjected to arbitration with just the named Plaintiffs. The Court is not persuaded of her position. The duplication of proceedings alone in these circumstances is not a disqualifying factor. "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Lowry's] decision to file a suit naming [Plaintiffs and Sparks, Willis, and Frazier] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 202 (6th Cir. 2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that, while there is a risk that the state court will reach an inconsistent outcome regarding the arbitration agreement as it relates to Davis, it is a low risk. This does not rise to the degree of prejudice required to conclude an absent party is

indispensable. *Id.* at 203. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

Finally, Lowry argues that an adequate remedy exists in state court if this Court dismisses the case. This is true, but the factors, when balanced, do not militate in favor of the conclusion that Sparks, Willis, and Frazier are indispensable parties. It follows that the failure to join him does not warrant dismissal. Ultimately, the requirements of diversity of jurisdiction have been met, and this Court has subject matter jurisdiction over this case.

## II.

Next, the Court considers whether it should abstain from exercising jurisdiction and dismiss Plaintiff's complaint upon application of the *Colorado River* abstention doctrine which permits this Court to dismiss a cause pending before it in favor of a parallel state court action. Several other courts in this district have recently concluded that abstention is inappropriate in circumstances substantially similar to those presented in this matter. *See Preferred Care, Inc. v. Howell*, Civil No. 16-13-ART, 2016 WL 2858523, *3-4, -- F.Supp.3d ---- (E.D. Ky. May 13, 2016); *Richmond Health Facilities Kenwood, LP v. Nichols,* Civil Action No. 5:14-141-DCR, 2014 WL 4063823 (E.D.Ky. Aug.13, 2014);

*Brookdale Senior Living, Inc. v. Caudill,* Civil Action No. 5:14-098-DCR; 2014 WL 3420783 (E.D. Ky. July 10, 2014); *GGNSC Vanceburg, LLC, v. Hanley,* Civil Action No. 0:13-106-HRW, 2014 WL 1333204 (E.D.Ky. Mar.28, 2014); *GGNSC Vanceburg, LLC, v. Taulbee,* Civil Action No. 5:13-cv-71-KSF, 2013 WL 4041174 (E.D.Ky. Dec.19, 2013); *but see Preferred Care of Delaware, Inc. v. Vanarsdale*, 152 F.Supp.3d 929, 930-32 (E.D. Ky. 2016) (abstaining where state court had issued an interlocutory ruling on the enforceability of the arbitration agreement). In each instance, there was an allegation of negligence in care provided at a nursing home. The party claiming injury filed a civil action in state court, and the nursing home then asserted that the state court claims were subject to the binding arbitration agreement between the parties and demanded the dispute be referred to arbitration and the state court case dismissed with prejudice. In each instance, the nursing home then filed a complaint in the federal court, alleging federal jurisdiction by way of diversity (and omitting the nursing home administrators, arguably subject to the arbitration agreement but without diverse citizenship, as a party in the federal court action), arguing that the arbitration agreement was valid and enforceable, and asking the federal court to compel the party claiming injury to arbitrate his or her state claims and to enjoin him or her from further pursuing his or her claims in state court.

In *Taulbee,* the late Karl S. Forester of this Court summed up abstention doctrine as follows:

> Even where federal courts properly have jurisdiction over the matter, a district court may abstain from exercising its jurisdiction and refrain from hearing a case in limited circumstances, *Saginaw Hous. Comm'n v. Bannum, Inc.,* 576 F.3d 620, 625 (6th Cir. 2009). This exception is narrow because a district court presented with a case that arises under its original jurisdiction has a "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by the coordinate branches of government and duly invoked by litigants. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 813.

*Taulbee*, 2013 WL 4041174 at *2. Abstention is appropriate under certain limited circumstances, as follows:

> Under Colorado River, the threshold issue is whether there are parallel proceedings in state court. *Crawley v. Hamilton Cnty. Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984). Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 206 (6th Cir.2001). Those factors are: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state

or federal; (6) the adequacy of the state
court action to protect the federal
plaintiff's rights; (7) the relative progress
of state and federal proceedings; and (8) the
presence or absence of concurrent
jurisdiction. *Id.*

*Id.*

The analysis is straightforward. No one disputes that the present action is parallel to the state court proceedings; thus, the Court applies the eight factor test. *See id.* at *3 (citing *PaineWebber,* 276 F.3d at 206). As the Court sees the matter, only two factors favor abstention. First, it is impossible that the federal forum is less convenient to the parties, since Lexington is but a few miles from Jessamine County (in which the injuries allegedly occurred and near which the Court presumes that most of the witnesses reside). *See id.* at *3. Second, the state court action is no doubt adequate to protect the federal plaintiffs' rights because, under the Supremacy Clause, a state court is bound by the requirements of the FAA. *Id.*

The others favor federal jurisdiction, keeping in mind that "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765, (1983). The parties agree that the case does not involve real property or the assumption of jurisdiction over any res or property. Thus, the first factor weighs in favor of the exercise of federal court jurisdiction and against abstention. *Id.*

(citing *Romine v. Compuserve Corp.,* 160 F.3d 337, 341 (6th Cir.1998)). The third factor offers little to no support for Defendant's argument in favor of abstention, since the desire to avoid piecemeal litigation is insufficient to overcome a strong federal policy in favor of arbitration or, in this instance, the exercise of jurisdiction. *PaineWebber,* 276 F.3d at 207.

With respect to the order in which jurisdiction was obtained by each court, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21. A review of the docket in the Jessamine Circuit Court reveals that nothing has happened since the time this matter was commenced. An answer has been filed in that action and nothing more. Since both parties remain in the early pleading stages, the fourth factor weighs against abstention. For much the same reason, the seventh factor-the relative progress of the state and federal proceedings—weights against abstention as there has been limited progress in the state court to date.

As to the fifth factor, regarding the source of law, while it is true that state law will govern the standard contract defenses Lowry raises against the arbitration agreement, the Federal Arbitration Act governs the enforceability of arbitration agreements generally and applies here. The FAA presents a "liberal federal policy favoring arbitration agreements" that must be taken

into account even when state-law issues are presented. *Moses H. Cone,* 460 U.S. at 24. It follows that this factor weighs in favor of federal court jurisdiction or, at the very least, not against it in this instance. The final factor under *Colorado River* is the presence or absence of concurrent jurisdiction. While there is concurrent jurisdiction, this fact only marginally favors abstention, if at all. As noted above, the governing law is the FAA, which "expresses a preference for federal litigation," The existence of concurrent jurisdiction "is insufficient to justify abstention" under the circumstances. *PaineWebber,* 276 F.3d at 208–09.

On balance, the circumstances in this matter do not present the "exceptional" circumstances necessary to compel this Court to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817–1". Accordingly, this Court declines to abstain.

## III.

Finally, the Court considers whether Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because the underlying ADR Agreement is invalid and unenforceable. Specifically, Defendant argues (1) that the ADR Agreement does not evidence a contract involving interstate commerce, (2) that the ADR Agreement is facially unenforceable because it is

unconscionable, and (3) that the ADR Agreement is unenforceable because the attorney-in-fact did not possess the authority to execute it.

(1)

Even assuming that Lowry correctly contends that the care provided to Harvey occurred only within the borders of the Commonwealth of Kentucky, this is a case which clearly falls within the scope of the FAA. The FAA applies to "contract[s] evidencing a transaction involving commerce," 9 U.S.C. § 2, and extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice ... subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoted in *Nichols*, 2014 WL 4063823 at *8; *Brookdale Sr. Living Inc. v. Stacy*, 27 F.Supp.3d 776, 791–92 (E.D.Ky. 2014)). "The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Id.* (citing *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273–274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)).

Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to

federal control. *See Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 589 (Ky. 2012) (citing *Alafabco*, 539 U.S. at 56–57). Courts in the Eastern District of Kentucky, as well as others, have found that similar nursing home residency agreements are contracts "evidencing a transaction involving commerce," under the FAA. *See Nichols*, 2014 WL 4063823 at *8; *Caudill*, 2014 WL 3420783, at *9; *see also Stacy*, 27 F.Supp.3d at 791–92; *Hanley*, 2014 WL 1333204 at *8–9; *GGNSC Taulbee*, 2013 WL 4041174 at *10–11 (remarking that courts have looked to the acceptance of Medicare as evidence of interstate commerce); and *Warner*, 2013 WL 6796421 at *7–8.

The arbitration agreement in this case is a component of a larger contract that evidences a transaction involving interstate commerce. *See Stacy,* 27 F.Supp.3d at 791–92. As other courts have pointed out, "[t]he food, medicine, and durable medical supplies that [the plaintiffs] provided must come from somewhere." *Id.* at *14 (quoting *GGNSC Louisville Hillcreek, LLC v. Warner,* Civil Action No. 3:13–cv–752–H, 2013 WL 6796421, *8 (W.D.Ky. Dec.19, 2013)). Accordingly, Lowry's argument that the arbitration agreement is unenforceable under the FAA because it does not evidence a transaction involving interstate commerce is without merit.

(2)

Defendant argues next that the procedural and substantive nature of the ADR Agreement renders it unconscionable.

16

Unconscionability, in the Commonwealth of Kentucky, is a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). It is "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* (citing *Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. Ct. App. 1978)).

Defendant argues that "[t]he ADR Agreement is part of a mass-produced, boiler-plate, pre-printed document, likely presented to the Defendant with in a lengthy stack of admissions paperwork" when "the Plaintiffs are aware that the admissions process is often an overwhelming experience. Yet, the Plaintiffs knowingly present to residents a stack of admissions paperwork consisting of legal documents, which are lengthy and cumbersome, to sign typically at one sitting." *See* [DE 6-1.] She points, as well to what she describes as "an obviously gross disparity of bargaining power between the parties in situations like the instant case. The Plaintiffs, as a healthcare services conglomerate, draft and select the desired placement and presentation of the ADR Agreement to residents and their families when they are facing the emotional

17

and difficult task of seeking necessary care for a loved-one from an unknown third party." At the heart of her argument is this: "These arbitration agreements are not entered into by two commercially sophisticated parties seeking mutual benefits in order to promote commercial efficiency. Instead, these agreements are utilized to protect the healthcare conglomerate and undermine the justice system in a whole arena of personal injury law." She points out, as well, the relatively larger expense imposed on plaintiffs in suits like hers with cost-sharing imposed by the process, as well as the tendency to truncate discovery.

The agreement in question contains the following features: (1) it is a stand-alone agreement; (2) it consists of five pages printed in normal font; (3) there is a separate paragraph setting forth that the agreement is not a condition of admission to the facility; (4) it provides no limitation on type or amount of damage claims; (5) there is no limitation on causes of action; (6) there is no suspect forum selection; (7) the agreement provides no truncation of the otherwise applicable statute of limitations; and (8) ultimately, the terms are such that a person of ordinary experience and education is likely to understand them.

In other words, there is nothing to suggest that the agreement is "one-sided, oppressive and unfairly surprising" or that the dichotomy between the parties, a health care company and an

individual seeking nursing home care, accompanied by his family in seeking that care, resulted in some sort of bargain that should not be enforced. *Conseco,* 47 S.W.3d at 341. For this reason, other courts applying Kentucky law have found that arbitration agreements similar to the one at bar and presented as part of the nursing home admission process were not procedurally unconscionable. *See, e.g., Nichols,* 2014 WL 4063823 at *9; *Abell v. Bardstown Medical Investors, Ltd.,* 2011 WL 2471210, *1–3 (W.D.Ky. June 20, 2011).

Moreover, the arbitration agreement is not, without something more, void against public policy. It is well established that there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi,* --- U.S. ----, 132 S.Ct. 23, 25, 181 L.Ed.2d 323 (2011). Recently, the United States Supreme Court specifically rejected an argument that arbitration agreements can be voided for public policy reasons. *Marmet Health Care Center, Inc. v. Brown,* --- U.S. ----, 132 S.Ct. 1201, 1203–4, 182 L.Ed.2d 42 (2012). The high Court held: " '[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.' " *Id.* (quoting *AT & T Mobility LLC v. Concepcion,* 563 U.S. ----, ----, 131 S.Ct. 1740, 1747, 179 L.Ed.2d 742 (2011)).

Accordingly, the Court declines to provide relief to Defendant on these grounds.

Finally, the Court considers whether the Lowry, as attorney-in-fact had authority to execute and bind Harvey and the estate to the ADR Agreement such that a valid and enforceable ADR Agreement exists.  The durable power of attorney executed by Harvey provides that her attorney-in-fact Lowry was authorized, among other things, "enter into binding contracts on [her] behalf."  [DE 3-3.]  In this way, the matter at hand is distinct from those situations in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), and *Pine Tree Villa, LLC v. Brooker*, 612 F. App'x 340, 341 (6th Cir. 2015), for example, where the powers of attorney in question granted express authority only to make health decisions and, thus, did not authorize entry into an arbitration agreement. The Court concludes that she had authority to enter into the Arbitration Agreement on behalf of Harvey.  However, there are limits even here.

The parties to the Arbitration Agreement, Diversicare of Nicholasville, LLC, and Marsha Lowry as "Resident's Authorized Representative" agreed that "to resolve any dispute that might arise between [them] through arbitration," including claims for breach of contract, violations of rights, common law or statutory negligence, malpractice, or "any claim based on any departure from accepted standards of medical or nursing care," among others.  It

follows that those claims are subject to arbitration but not all claims in the state court action.

The state court complaint alleges a wrongful death claim vis-à-vis negligence and corporate negligence against the various defendants to that action as well as violations of the rights of long term care residents under KRS § 216.515 and personal injury to Harvey by means of negligence and corporate negligence. With respect to the wrongful death claim, under Kentucky law, a decedent (or a representative thereof) has no authority to bind wrongful death beneficiaries to an arbitration agreement. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197 (6th Cir. 2016); *Preferred Care, Inc. v. Howell*, No. CV 16-13-ART, 2016 WL 2858523, at *5 (E.D. Ky. May 13, 2016) (citing *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 313–14 (Ky. 2016); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 597–99 (Ky. 2012)). Because a wrongful death claim "is not derived through or on behalf of the resident, but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss," *Ping*, 376 S.W.3d at 599, the wrongful death beneficiaries were not parties to the arbitration agreement. *Id.* at 598–99. Neither is *Ping* preempted by the Federal Arbitration Act. *Richmond Health Facilities*, 811 F.3d at 198-203. Under federal law, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean*

*Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). Accordingly, as neither Harvey nor her attorney-in-fact, Lowry had the authority to bind the wrongful-death beneficiaries to any ADR agreement, Plaintiff's effort to to Defendant to arbitrate these claims is misplaced and the Court will not compel Defendant to arbitrate the wrongful death claims or stay the prosecution of those claims in the Jessamine Circuit Court.

Lowry also brought two non-wrongful-death claims in her underlying state complaint: violations of the rights of long term care residents under KRS § 216.515 and personal injury by means of negligence and corporate negligence. These claims are not brought on behalf of Lowry or the estate individually, but are instead brought on behalf of Harvey. *See Whisman*, 478 S.W.3d at 314 (noting that personal injury claims and statutory claims arising under KRS § 216.515 belong to the decedents). So, Lowry and the estate are bound by Harvey's arbitration agreement for the litigation of these claims.

Finally, in this vein, the Court considers Defendant's argues, as well, that any injunction would violate the Anti-Injunction Act. While the FAA requires a federal court to stay their own proceedings, it does not specifically authorize federal courts to stay pending state court cases. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). Rather, the federal

court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act, 28 U.S.C. § 2283. The Sixth Circuit has concluded that a district court's injunction of state-court proceedings after compelling arbitration does not violate the Anti-Injunction Act because the injunction fell "within the exception for injunctions 'necessary ... to protect or effectuate [district court] judgments.'" *Great Earth*, 288 F.3d at 894. It concluded that "[a]n injunction of the state proceedings [was] necessary to protect the final judgment of the district court on this issue." *Id*. Since enjoining the state proceeding is not barred by the Anti-Injunction Act and such injunction would serve to protect or effectuate this Court's judgments, Lowry will be enjoined from pursuing the pending state court claims for violations of the rights of long term care residents under KRS § 216.515 and personal injury by means of negligence and corporate negligence before the Jessamine Circuit Court.

Accordingly, **IT IS ORDERED** that:

(1) That Defendant's Amended Motion to Dismiss [DE 6] is **GRANTED IN PART** and **DENIED IN PART;**

(2) That Defendant's Motion to Dismiss [DE 5] is **DENIED AS MOOT;**

(3) That Plaintiffs' Motion for Expedited Consideration of Complaint to Compel Arbitration and Enjoin Defendant [DE 3] is **GRANTED IN PART** and **DENIED IN PART**;

(4) That Lowry, acting as administratrix for Harvey, is **ENJOINED** from pursuing her pending state court claims for violations of the rights of long term care residents under KRS § 216.515 and personal injury by means of negligence and corporate negligence before the Jessamine Circuit Court.

This the 30th day of September, 2016.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge